# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o United States Attorney's Office<br>555 Fourth St., N.W.,<br>Washington, DC 20530,<br><br>    Plaintiff,<br><br>  v.<br><br>ALL FUNDS ON DEPOSIT IN ACCOUNT<br>number AD0200060002541243336622, in the<br>name of Almond Arches S.A. at<br>Banca Privada d'Andorra,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

*COMES NOW*, plaintiff United States of America, by and through its attorney, the United States Attorney for the District of Columbia, to bring this verified complaint for forfeiture in a civil action *in rem* against the defendant property, which is funds now on deposit in an account maintained at a financial institution located outside the United States in the Principality of Andorra. In support of this cause, plaintiff states as follows:

## NATURE OF THE ACTION AND DEFENDANTS *IN REM*

1. This is a civil action *in rem* brought against the defendant property to forfeit it to the United States, as authorized by 18 U.S.C. § 981(a)(1)(A). The defendant property is all funds in an account at a financial institution in the Principality of Andorra.

2. Pursuant to 18 U.S.C. § 981(a)(1)(A), the defendant property is forfeitable to the United States because it constitutes "property, real or personal, involved in a transaction or attempted transaction in violation" of 18 U.S.C. §§ 1956, 1957 or 1960, "or any property traceable to such

property."

## THE DEFENDANT *IN REM*

3. The defendant property is more fully described as:

**All funds in account number AD0200060002541243336622 at the Banca Privada d'Andorra, which is held in the name of Almond Archs, S.A.**

This defendant property is located in the Principality of Andorra, which is a foreign country.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction of this civil action by virtue of 28 U.S.C. § 1345 because it has been commenced by the United States, and by virtue of 28 U.S.C. § 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of Congress.

5. Venue is proper in this District by virtue of 28 U.S.C. § 1355(b)(1), because this is a civil forfeiture action brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred. Pursuant to 28 U.S.C. § 1355(b)(2), venue also is proper in the United States District Court for the District of Columbia because the defendant property is subject to forfeiture under the laws of the United States and is located in a foreign country.

6. This civil action *in rem* for forfeiture is governed by 18 U.S.C. §§ 981 and 983, the Federal Rules Of Civil Procedure and the Supplemental Rules For Admiralty Or Maritime Claims And Asset Forfeiture Actions, especially Rule G.

## STATEMENT OF FACTS

7. CPF Corporation, Inc. (CPF"), was a business company incorporated in 1983 in the state of Maryland. From 1986 through at least March 2001, Mr. Jose Sampedro was CPF's co-owner

and president. All statements of fact in this complaint about CPF and Mr. Sampedro's actions taken with regard to CPF's management and assets refer to the time between 1986 and March 2001.

8. Mr. Jose Sampedro is a citizen of the United States.

9. Mr. Mario Lumpuy was CPF's only other co-owner, and Mr. Sampedro and Mr. Lumpuy each owned half of CPF.

10. CPF did business in the District of Columbia and maintained offices there. CPF's business was contracting to perform janitorial and other services in the District of Columbia, the state of Maryland, and the Commonwealth of Virginia, mostly at offices of government agencies. Between 1996 and 2001, CPF had revenues exceeding $28 million.

11. As CPF's president, Mr. Sampredro functioned as the corporation's chief executive, operating, and financial officer. In these roles, Mr. Sampedro personally directed CPF's business affairs.

12. CPF maintained in its name one or more accounts with one or more financial institutions. CPF's principal business operating and checking account was account number XXXXX2297, which CPF held in its name at what was then NationsBank and is now Bank of America.

13. Mr. Sampedro had the power to authorize CPF funds to be disbursed from NationsBank account number XXXXX2297. Mr. Sampedro was the only person with signature authority for NationsBank account number XXXXX2297, that is, only Mr. Sampedro's signature was necessary to authorize withdrawals from this account.

14. Through at least March 2001, Mr. Sampedro also maintained an account with this same bank, then-NationsBank, held as a joint personal account with his wife, number

XXXXXX8952.  The names on this account were Jose Sampedro and that of his wife.

## MR. SAMPEDRO'S THEFT OF FUNDS DEFRAUDING CPF'S CO-OWNER

### 1.  Mr. Sampedro diverts CPF receivables into his personal account:

15.     Between May 1994 and March 2001, Mr. Sampedro several times caused checks made payable to CPF to be deposited directly into Mr. Sampedro's joint personal account with his wife, then-NationsBank account number XXXXXX8952.

16.     Mr. Sampedro had no lawful authority to cause checks made payable to CPF to be deposited directly into Mr. Sampedro's joint personal account with his wife, NationsBank account number XXXXXX8952.

17.     CPF's only co-owner did not consent to Mr. Sampedro causing checks made payable to CPF to be deposited directly into Mr. Sampedro's joint personal account with his wife, NationsBank account number XXXXXX8952.

18.     CPF's only co-owner did not know that Mr. Sampedro had caused checks made payable to CPF to be deposited directly into Mr. Sampedro's joint personal account with his wife, NationsBank account number XXXXXX8952.

19.     By causing checks made payable to CPF to be deposited directly into Mr. Sampedro's joint personal account with his wife, NationsBank account number XXXXXX8952, Mr. Sampedro defrauded CPF's co-owner and stole funds from him between May 1994 and March 2001.  The stolen funds totaled more than $11 million.

### 2.  Mr. Sampedro transfers CPF funds into his personal account:

20.     Between May 1994 and March 2001, Mr. Sampedro several times caused funds, which had been deposited into CPF's operating account number XXXXX2297, to be transferred into

Mr. Sampedro's joint personal account with his wife, NationsBank account number XXXXXX8952.

21. Mr. Sampedro had no lawful authority to cause funds to be transferred from CPF's operating account number XXXXX2297 into Mr. Sampedro's joint personal account with his wife, NationsBank account number XXXXXX8952.

22. CPF's only co-owner did not consent to Mr. Sampedro causing funds to be transferred from CPF's operating account number XXXXX2297 into Mr. Sampedro's joint personal account with his wife, NationsBank account number XXXXXX8952.

23. CPF's only co-owner did not know that Mr. Sampedro had caused funds to be transferred from CPF's operating account number XXXXX2297 into Mr. Sampedro's joint personal account with his wife, NationsBank account number XXXXXX8952.

24. By causing funds to be transferred from CPF's operating account number XXXXX2297 into Mr. Sampedro's joint personal account with his wife, NationsBank account number XXXXXX8952, Mr. Sampedro defrauded CPF's co-owner and stole funds from him between May 1994 and March 2001. The stolen funds totaled more than $11.4 million.

25. The amount of CPF funds stolen by being fraudulently deposited or transferred into Mr. Sampedro's joint personal account with his wife, NationsBank account number XXXXXX8952, between May 1994 and March 2001, was more than $22 million.

**CRIMINAL CHARGES AGAINST MR. SAMPEDRO AND HIS FLIGHT OVERSEAS**

26. On March 21, 2001, the United States filed a criminal complaint with the U.S. District Court for the District of Columbia charging Mr. Sampedro with bribery of a public official, in violation of 18 U.S.C. § 201. This complaint was captioned United States v. Jose M. Sampedro, Magistrate Number 01-0178m.

27. As a result of this criminal complaint, on March 21, 2001, a U.S. magistrate judge issued a warrant to arrest Mr. Sampedro.

28. Upon information and belief, after learning that this arrest warrant had been issued in March 2001, Mr. Sampedro fled the United States to a foreign a country. Since March 2001, Mr. Sampedro has been a fugitive from the United States.

29. Upon information and belief, Mr. Sampedro resided in the Kingdom of Spain after fleeing the United States in 2001.

30. On November 29, 2001, Mr. Sampedro was arrested in the Kingdom of Spain, pursuant to a U.S. provisional arrest request. Mr. Sampedro was released on bail pending the extradition proceedings. A Spanish Court found Mr. Sampedro was subject to extradition to the United States.

31. Upon information and belief, Mr. Sampedro fled the Kingdom of Spain before he could be extradited to the United States. Since that time, Mr. Sampedro has remained a fugitive from the United States.

32. On March 28, 2002, a federal grand jury in the District of Columbia returned a 23-count indictment, which charged Mr. Sampedro with (a) unlawful conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; (b) bribery of a public official, in violation of 18 U.S.C. § 201(b)(1)(A); (c) mail fraud, in violation of 18 U.S.C. § 1341; (d) wire fraud, in violation of 18 U.S.C. § 1343; (e) money-laundering, in violation of 18 U.S.C. §§:1956(a)(1)(A)(ii) and 1956(a)(1)(B)(i); (f) interstate transportation of stolen property, in violation of 18 U.S.C. § 2314; and (g) a forfeiture allegation. This case is captioned United States v. Jose M. Sampedro, Criminal Number 02-0153 (PLF), and it remains pending in the United States District Court for the District

of Columbia.

33. The crimes charged in the indictment all relate to Mr. Sampedro's actions as an officer of the CPF company.

34. After the return of this indictment, a warrant for Mr. Sampedro's arrest issued from the United States District Court for the District of Columbia, and that warrant remains outstanding.

**MR. SAMPEDRO'S DEPOSIT OF STOLEN FUNDS IN FOREIGN BANK ACCOUNTS**

35. Mr. Sampedro has used the name "Jose Maria Lopategui " to establish one or more accounts with financial institutions outside the United States, which he controls.

36. Mr. Samepdro's wife has used the name "Maria Aurora Sanchez Rodriguez" to establish one or more accounts with financial institutions outside the United States on Mr. Sampedro's behalf or for his benefit. On information and belief, "Maria Aurora Sanchez Rodriguez" was Mr. Sampedro's wife's maiden name. Mr. Sampedro has controlled the funds in these accounts.

37. Mr. Sampedro has a sister who has used the name Concepcion Lopategui to establish one or more accounts with financial institutions outside the United States on Mr. Sampedro's behalf or for his benefit. Ms. Lopategui has a husband, Mr. Sampedro's brother-in-law, who has used the name Angel Vicente Ribero Garcia to establish one or more accounts with financial institutions outside the United States on Mr. Sampedro's behalf or for his benefit. Mr. Sampedro has controlled the funds in these accounts, whether established by his sister or his brother-in-law, or both.

**1. Stolen CPF Funds Sent to Account Number 0700000405 at Caixa Inversiones**

38. "la Caixa" is an official short-hand designation and common nick-name for an institution called "Caixa d'Estalvis i Pensions de Barcelona" in the Catalan language and "Caja de Ahorros y Pensiones de Barcelona" in the Spanish language. Catalan is one of the principal

languages of Catalonia, an autonomous community in the Kingdom of Spain, and Catalonia's capital is Barcelona. With its historical origins as a savings bank, "la Caixa" is one of Spain's largest financial institutions. "la Caixa" has had operations in the Principality of Andorra, where it was commonly known as CaixaBanc. Caixa Inversiones is part of "la Caixa."

39. Between November 1994 and May 1999, Mr. Sampedro caused more than $8.5 million to be transferred from his joint personal account with his wife, then-NationsBank account number XXXXXX8952, to account number 0700000405 at Caixa Inversiones in Spain. After these transfers, Mr. Sampedro directly or indirectly controlled the funds in account number 0700000405 (Caixa Inversiones), which was held in the names of Jose Maria Lopategui and Maria Aurora Sanchez Rodriguez.

40. The funds transferred from Mr. Samepedro's joint personal bank account with his wife, number XXXXXX8952, to account number 0700000405 (Caixa Inversiones) are traceable to funds that had been stolen from CPF's co-owner and the proceeds of mail fraud or wire fraud.

41. Upon information and belief, the purpose of these financial transactions of transferring funds from Mr. Samepedro's joint personal bank account with his wife, number XXXXXX8952, to account number 0700000405 (Caixa Inversiones), was to conceal or disguise the nature, location, source, ownership, or control of funds that had been stolen from CPF's co-owner and the proceeds of mail fraud or wire fraud.

**2. Stolen CPF Funds Sent to accounts at Caja de Ahorros y Pensiones de Barcelona (la Caixa)**

42. Between February 12, 1997, and March 21, 2000, Mr. Sampedro caused more than $8.9 million to be transferred from his joint personal bank account with his wife, at the then NationsBank in the United States, number XXXXXX8952, into accounts at Caja de Ahorros y

Pensiones de Barcelona (la Caixa), a financial institution in the Kingdom of Spain. These funds were maintained in accounts in U.S. dollars, Euros, and Pesetas. The funds were placed in the following accounts: 2100-2165-19-0300030163, 2100-2165-11-0700000518, 2100-2165-12-7300010136, and 2100-2165-15-7200300494.

43. After these transfers, Mr. Sampedro directly or indirectly controlled the funds in all of these accounts. The account number 0300030163 (la Caixa) was held in the name of Ms. Laura Victoria Sanchez. Upon information and belief, Ms. Sanchez is Mr. Sampedro's daughter.

44. The funds transferred from Mr. Samepedro's joint personal bank account with his wife, number XXXXXX8952, into account number 0300030163 (la Caixa) and the other accounts are traceable to funds that had been stolen from CPF's co-owner and the proceeds of mail fraud or wire fraud.

45. Upon information and belief, the purpose of these financial transactions of transferring funds from Mr. Samepedro's joint personal bank account with his wife, number XXXXXX8952, into account number 0300030163 (la Caixa) and the other accounts, was to conceal or disguise the nature, location, source, ownership, or control of funds that had been stolen from CPF's co-owner and the proceeds of mail fraud or wire fraud.

46. Upon information and belief, after causing stolen CPF funds to be deposited into accounts through financial transactions at the Spanish financial institutions Caixa Inversiones and Caja de Ahorros y Pensiones de Barcelona (la Caixa), Mr. Sampedro or a person or persons acting on his behalf or for his benefit caused funds in the accounts at these two institutions to be transferred into the Spanish la Caixa Bank account number 2100-2165-19-970. Mr. Sampedro directly or indirectly controlled the funds in this account and their disposition.

47. Upon information and belief, the funds transferred transferred into the Spanish la Caixa Bank account number 2100-2165-19-970, are traceable to funds that had been stolen from CPF's co-owner and the proceeds of mail fraud or wire fraud.

48. Upon information and belief, the purpose of these financial transactions of transferring funds into the Spanish la Caixa Bank account number 2100-2165-19-970, was to conceal or disguise the nature, location, source, ownership, or control of funds that had been stolen from CPF's co-owner and the proceeds of mail fraud or wire fraud.

### 3.  Establishing Accounts at Financial Institutions in Andorra

49. Upon information and belief, in March 2001, Mr. Sampedro or a person or persons acting on his behalf or for his benefit opened account number 2776AN at CaixaBanc in the Principality of Andorra.

50. By the end of March 2001, funds totaling almost 1.4 billion pesetas had been credited to Andorran CaixaBanc account number 2776AN through the deposit of checks drawn on the Spanish la Caixa Bank account number 2100-2165-19-970. This was equal to about $15 million. Mr. Sampedro directly or indirectly controlled the funds in this account and their disposition.

51. The funds totalling almost 1.4 billion pesetas deposited into account number 2776AN at CaixaBanc in the Principality of Andorra in 2001 are traceable to funds that had been stolen from CPF's co-owner and the proceeds of mail fraud or wire fraud.

52. Upon information and belief, the purpose of these financial transactions of depositing into Andorran CaixaBanc account number 2776AN almost 1.4 billion pesetas in checks drawn on the Spanish la Caixa Bank account number 2100-2165-19-970, was to conceal or disguise the nature, location, source, ownership, or control of funds that had been stolen from CPF's co-owner and the

proceeds of mail fraud or wire fraud.

53. During the next five years from 2001 through 2006, Mr. Sampedro or a person or persons acting on his behalf or for his benefit used the funds from the March 2001 deposit(s) into Andorran CaixaBanc account number 2776AN to open in succession a number of other, new accounts at financial institutions in the Principality of Andorra. As each new account was opened, the balance of the previous account was transferred into the new account, and the old account was closed. Mr. Sampedro directly or indirectly controlled the funds in these accounts and their disposition.

54. In one of this succession of financial transactions, upon information and belief, on June 10, 2006, Mr. Sampedro or a person or persons acting on his behalf or for his benefit opened account number AD0200060002541243336622 with Banca Privada d'Andorra in the name of Almond Archs, S.A. Upon information and belief, Mr. Sampedro directly or indirectly controls the funds in this account and their disposition.

55. Almond Archs, S.A. is a Panamanian shell company, which transacts no business.

56. Mr. Sampedro directly or indirectly controls the financial assets of Almond Archs, S.A., including funds in accounts held in its name.

57. After account number AD0200060002541243336622 was established with Banca Privada d'Andorra in the name of Almond Archs, S.A., Mr. Sampedro or a person or persons acting on his behalf or for his benefit, caused to be transferred into it the funds then remaining in another account at the Banca Privada d'Andorra, held in the name of Kaisa Finance S.A., a shell company, which was under the effective control of Mr. Sampedro.

58. As a result of this transaction or transactions, at least 4.7 million euros, then the

equivalent of about $6.2 million, were deposited into account number AD02000600025412 43336622 at Banca Privada d'Andorra, held in the name of Almond Archs, S.A. This account number AD02000600025412 43336622 at Banca Privada d'Andorra is located in the Principality of Andorra. The funds in this account are the defendant property in this action.

59. The funds totalling almost 4.7 million Euros deposited into account number AD02000600025412 43336622 at Banca Privada d'Andorra, held in the name of Almond Archs, S.A., are traceable to funds that had been stolen from CPF's co-owner and the proceeds of mail fraud or wire fraud.

60. Upon information and belief, the purpose of the financial transaction of transferring funds into account number AD02000600025412 43336622 at Banca Privada d'Andorra, held in the name of Almond Archs, S.A., was to conceal or disguise the nature, location, source, ownership, or control of funds that had been stolen from CPF's co-owner and the proceeds of mail fraud or wire fraud.

## COUNT I

1. All statements and averments made in paragraphs 1-60 are re-alleged and incorporated, herein, by reference.

2. The defendant property is subject to forfeiture because it was involved in a "financial transaction," as defined in 18 U.S.C. § 1956(c)(4), the purpose of which was to conceal or disguise the nature, location, source, ownership or control of the proceeds of a violation of 18 U.S.C. §§ 1341 (relating to mail fraud), 1343 (relating to wire fraud) and/or § 2314 (relating to interstate transfer of stolen property), each of which is a "specified unlawful activity."

3. As such, the defendant property was involved in money laundering transactions in

violation of 18 U.S.C. § 1956(a)(1)(B)(i) and is, therefore, subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A).

**WHEREFORE**, the plaintiff United States of America prays that, as to the defendant property, **All funds in account number AD0200060002541243336622 at the Banca Privada d'Andorra, which is held in the name of Almond Archs, S.A.**, due process and a warrant of arrest *in rem* issue according to law; that, pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed and the defendant property be condemned as forfeited to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper, together with the costs and disbursements of this action.

Respectfully submitted,

/s/ *Channing Phillips*
CHANNING PHILLIPS, D.C. Bar No. 415793
UNITED STATES ATTORNEY, acting


/s/ *Deborah L. Connor*
DEBORAH L. CONNOR, D.C. Bar No. # 452414
Assistant United States Attorney


/s/ *Barry Wiegand*
BARRY WIEGAND, D.C. Bar No. 424288
Assistant United States Attorney
Criminal Division, Asset Forfeiture Unit
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
(202) 307-0299
William.B.Wiegand@USDoJ.Gov

**VERIFICATION**

I, Debra L. LaPrevotte, a Special Agent for the U.S. Federal Bureau of Investigation, hereby verify and declare under penalty of perjury that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the U.S. Federal Bureau of Investigation.

I hereby verify and declare under penalty of perjury under the laws of the United Stats of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this _____ day of October 2009.

> /s/ *Debra L. LaPrevotte*
> Debra L. LaPrevotte
> Special Agent
> Federal Bureau of Investigation